UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**F I L E D**

OCT 12 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-561-GWU

LINDA M. BYRD,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to
    Step 4. If no, the claimant is not disabled. See 20 C.F.R.
    404.1520(c), 404.1521, 416.920(c), 461.921.

1

Byrd

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Byrd

whether objective medical evidence confirms the severity of the alleged
pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Case: 6:04-cv-00561-GWU Doc #: 6 Filed: 10/12/05 Page: 5 of 13 - Page ID#: 42

Byrd

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Byrd

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Linda M. Byrd, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity and an anxiety disorder. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 25-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs assuming that she were capable of light level exertion, could only occasionally crouch or climb ladders, ropes, or scaffolds, and that she had a "limited but satisfactory" ability to relate to co-workers, interact with supervisors, persist on tasks, tolerate work-related stress in a routine eight-hour day, and understand and remember moderately

7

complex or complex instructions. (Tr. 68-9). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 69).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to anxiety attacks and a pinched nerve in her neck. (Tr. 130). At the administrative hearing, she testified that her primary problem was back and neck pain, and that she had neck spasms every two hours. (Tr. 50-1). Her treating orthopedic physician, Dr. Dubin, had given her a TENS unit and told her that her neck had soft tissue bruising. (Tr. 51). The plaintiff, who testified that she weighed 252 pounds, a height of 5'1", also stated that she could only stand for 15 minutes before the muscles gave way in her legs, and could only sit for 35 to 45 minutes without her back muscles knotting. (Tr. 52-4). Her family physician, Dr. Rader, prescribed a muscle relaxer. He had also diagnosed gout and prescribed medication for this condition, but she continued to have flareups of gout, and her feet would swell even though she propped them up several times a day and all night. (Tr. 55-6, 65). Other physical problems included chest pains, although a workup, including a cardiac catheterization, had been normal. (Tr. 57, 66). Regarding her nervous problems, the plaintiff testified that anxiety kept her from

8

Byrd

sleeping, although she later stated that the Elavil which had been prescribed for the condition made her sleep all the time. (Tr. 57, 59). She was also taking Sinequan for depression, but would still have a panic attack if she got around a large number of people. (Tr. 62).

Medical records submitted showed that the plaintiff was treated frequently for a number of conditions, but no source imposed any specific functional limitations.

In July of 2001, the plaintiff appeared at an emergency room complaining of a panic attack lasting for two days (Tr. 176-7), and she was then admitted to the Psychiatric Unit at the Corbin Baptist Hospital between July 27th and August 1st. On discharge, her diagnoses were anxiety disorder, "more than likely panic disorder without agoraphobia," a depressive disorder, and marijuana abuse. (Tr. 206). Her Global Assessment of Functioning (GAF) score was given as 31-40 on admission, which would reflect a major impairment. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. However, on discharge three days later, the GAF was 61-70, reflecting only mild symptoms. A urine drug screen during the hospitalization was positive for benzodiazepines and cannabinoids. (Tr. 206). She also stated that she had been on a "drinking spree" for three days because of an argument with her parents. (Tr. 208). By discharge, the plaintiff related that she was "100 percent better," had no complaints, her anxiety level was down, and she reported no side effects from her medications. (Tr. 207).

Byrd

It was recommended that she follow-up with counseling as an outpatient. However, the plaintiff later related to a consultative psychiatric examiner, Dr. Kevin Eggerman, that she had only followed up briefly at a Comprehensive Care Center and quit because it was not helping her. (Tr. 218).

Dr. Eggerman's examination took place in February, 2002, at which time the plaintiff related that she had chronic anxiety, and had never held a job for more than three months because she would become frustrated if people yelled at her. (Tr. 217). Her primary care physician gave her medication for anxiety, and she was currently on Ativan and Zoloft. (Tr. 218). She described her daily activities as watching TV, eating, sitting around the house, doing the dishes and preparing small meals, and since she had never had a driver's license, was taken shopping by her father. (Tr. 220). Dr. Eggerman commented that the plaintiff was superficially cooperative, but at times her effort was poor. (Id.). However, she was only mildly anxious at the beginning of examination and, by the end of the examination, was smiling and laughing with no evidence of tearfulness or affective distress. (Tr. 221). Dr. Eggerman diagnosed a mood disorder and a personality disorder, with a GAF of 65-70, both currently and for the past year, consistent with the discharge GAF score from the plaintiff's psychiatric hospitalization. He felt that the plaintiff would have a "fair" ability to understand and remember moderately complex or complex

10

instructions, relate to co-workers or supervisors, persist on tasks, and tolerate work-related stress. (Id.).[1]

Two non-examining state agency psychologists reviewed the record and opined that the plaintiff did not have a "severe" mental impairment. (Tr. 258, 272).

Subsequently, while office notes from treating family physicians show that the plaintiff was given prescriptions for such medications as Ativan (e.g., Tr. 243) as well as Sinequan and Elavil (Tr. 328), no specific functional restrictions are suggested, and it does not appear that the plaintiff was referred for psychiatric counseling. She was hospitalized in January, 2003 for complaints of chest pain, but this was eventually diagnosed as being the result of gastroesophageal reflux disease, although it was noted that the plaintiff was very anxious and was sure she was having a heart attack. Her condition was said to be "regulated" on medications including Gaviscon, Vistaril, and Sinequan. (Tr. 322). No functional restrictions are suggested.

Therefore, substantial evidence supports the ALJ's choice of mental hypothetical factors, which essentially reflect the comments made by Dr. Eggerman. There is no evidence for greater restriction.

As far as Byrd's physical condition was concerned, as the ALJ noted, there is no indication that gout was ever diagnosed in the medical records, including the

---

[1]The term "fair" was not defined.

11

January, 2003 hospitalization (Tr. 319-27) at which the plaintiff testified it had been discovered (Tr. 58). The plaintiff had an extensive workup for chest pain even before this hospitalization, with a normal echocardiogram, a normal nuclear stress test, and a normal cardiac catheterization in July, 2002. (Tr. 225-34). Further testing in January, 2003 included normal serial cardiac enzymes, normal EKGs, and a normal chest x-ray. (Tr. 322). Thus, there is no evidence of any cardiac condition. Dr. Christopher Feddock conducted a consultative examination of the plaintiff somewhat earlier, in January, 2002, at which time the plaintiff complained of pain in her right ankle and left shoulder, as well as chronic lower back pain. (Tr. 212). Dr. Feddock's examination showed that the plaintiff was morbidly obese, but had a normal station and gait, an equal grip, normal extremities, no motor, sensory, or reflex deficits, no evidence of spasm, and no impairment in toe and heel walking. (Tr. 214-15). He found no evidence of any significant physical restrictions. (Tr. 215). Subsequently, in addition to the negative cardiac workups previously mentioned, the plaintiff sought treatment from an orthopedist, Dr. Ronald Dubin, for evaluation of neck and left shoulder pain after a motor vehicle accident in October, 2002. (Tr. 307). Dr. Dubin noted that x-rays and an MRI of the cervical spine were normal, there were no motor, sensory or reflex deficits, and the plaintiff retained a full range of motion, although with pain on the extremes of motion. (Id.). His impression was a soft tissue injury. (Id.). He prescribed Fiorinal and home traction, and provided the

12

Byrd

plaintiff the cervical collar at her request "although this is not indicated." (Id.). Subsequently, his treatment focused on the plaintiff's left shoulder, after he noticed some popping and weakness on forward flexion and induction. (Tr. 306). An MRI of the joint did not show any dislocation or rotator cuff tear, but was consistent with inferior subluxation. (Tr. 303, 305). Another MRI of the cervical spine in March, 2003 was normal, and he again concluded that the plaintiff had a mostly soft tissue injury. (Tr. 298-9). He did not prescribe any medication, but when the plaintiff continued to complain of neck and left shoulder pain, he recommended physical therapy and provided a TENS unit. (Tr. 296). By June, the plaintiff reported that the therapy had helped. (Tr. 295). No functional restrictions are given.

Therefore, in view of the lack of functional restrictions from any treating source, the ALJ could reasonably have relied on the opinion of Dr. Feddock that the plaintiff had no physical restrictions, and the limitations the ALJ did find were essentially gratuitous.

The decision will be affirmed.

This the ___/Z___ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13